UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF  KENTUCKY
PADUCAH DIVISION

DOMENICO VILARDO                                                        PLAINTIFF

v.                                                  CIVIL ACTION NO. 5:23-CV-P49-JHM

WARDEN SCOTT JORDAN et al.                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Domenico Vilardo, a prisoner proceeding *pro se* and *in forma pauperis*, initiated this *pro se* 42 U.S.C. § 1983 action.  The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the following reasons, some of Plaintiff's claims will be dismissed, and some will be allowed to continue.

## I. STATEMENT OF CLAIMS

Plaintiff, an inmate at the Kentucky State Penitentiary (KSP), sues Warden Scott Jordan, Deputy Warden Lauren Plappert, Corrections Officers Caleb Alverio and Joshua Dillon, and Adjustment Officer Charles Roberts.  All Defendants are sued in their individual and official capacities with the exception of Defendants Jordan and Dillon, who are sued only in their individual capacities.

Plaintiff alleges that on December 12, 2022, Defendant Alverio used excessive force when he sprayed him with "O.C." spray and tased him while Plaintiff was in his cell.  He alleges that Defendant Alverio also violated his rights under the Americans with Disabilities Act (ADA) because what prompted the spraying of OC was Plaintiff turning around to be able to read Defendant Alverio's lips.  According to the complaint, Plaintiff is hearing-impaired.  He states that a sign on his cell door identifies him as such.

Plaintiff further alleges that Defendant Dillon, who was also present, twisted Plaintiff's fingers in an attempt to break them while putting him in cuffs.

Plaintiff alleges that he was found guilty of a charge of violent demonstration at an adjustment committee hearing, despite video evidence to the contrary, in front of Defendant Roberts.  He was given 30 days disciplinary segregation and removed from his work detail and his rehabilitation class.  He alleges that this punishment violated his right to due process and to be free from cruel and unusual punishment.

Plaintiff also alleges that he was kept in segregation after the 30-day disciplinary segregation for an investigation, which he alleges was a violation of the Eighth Amendment.  He alleges that being placed in the restricted housing unit (RHU) by Defendant Plappert, the removal of all of his clothes and bedding, and being forced to wear only paper underwear and a suicide smock for multiple months, with no response to his grievances, was deliberate indifference.  Plaintiff states that he wrote several letters to Defendants Plappert and Jordan about being kept in long-term segregation.  A copy of a grievance attached to his complaint reveals that his being stripped out and given a suicide security blanket and smock occurred when he was placed in disciplinary segregation.

As relief, Plaintiff asks for compensatory and punitive damages, release from illegal detention, release from the RHU, a transfer, parole review, and "cease and desist strip out/suicide smock and long term segregation."

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be

2

granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### A. Official-capacity claims for damages

   "[O]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). A state, its agencies, and state officials sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Further, the Eleventh Amendment acts as a bar to claims for monetary damages against a state, its agencies, and state employees or officers sued in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169. Therefore, Plaintiff's official-capacity claims for damages against

Defendants, all of whom are employees of the Commonwealth of Kentucky, must be dismissed for failure to state a claim upon which relief may be granted and for seeking monetary relief from a defendant who is immune from such relief.

### B. ADA claim

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, . . . be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the Sixth Circuit, in order to establish a prima facie case of intentional discrimination under Title II of the ADA, Plaintiff must show: (1) he has a disability; (2) he is otherwise qualified; and (3) he "was being excluded from participation, denied the benefits of, or subjected to discrimination under the program because of [his] disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

Plaintiff fails to state a claim under the ADA against Defendant Alverio based on one occasion in which he allegedly sprayed Plaintiff with O.C. when Plaintiff turned around to read his lips. *See, e.g.*, *Moore v. Curtis*, 68 F. App'x 561, 563 (6th Cir. 2003) (dismissing prisoner's ADA claim because "Moore did not allege or show that the defendants deprived him of any service, program, or activities because of his disability, and his disputes with staff and his inmate assistants resulted in only isolated instances where he missed meals or privileges."); *McCord v. Ohio Dep't of Rehab. and Corr.*, No. 1:10 CV 2355, 2011 WL 768079, at *2 (N.D. Ohio Feb. 28, 2011) ("Allegations of isolated instances of failing to accommodate a disabled prisoner's condition do not state a claim under the ADA.").

**C. Due-process claim**

Plaintiff alleges that after his disciplinary hearing he was placed in disciplinary segregation for 30 days, was removed from his work detail, and removed from his rehabilitation class.

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that must be followed before depriving a prisoner of good-time credits on account of alleged misbehavior.  This decision did not create a right to due process that attaches to all prison disciplinary proceedings.  Here, an attachment to the complaint shows that Plaintiff did not loss any good-time credit as a result of being found guilty of the charge of violent demonstration.

Nor does Plaintiff have a constitutionally protected interest in either his prison job or his rehabilitation class.  *See, e.g.*, *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989); *Frantz v. Mich. Dep't of Corr.*, No. 1:11–cv–584, 2011 WL 3100564, at *7 (W.D. Mich. July 25, 2011) ("Federal courts have consistently found that inmates have no constitutionally protected liberty interest in prison employment, vocation, rehabilitation, and educational programs based on the Fourteenth Amendment.") (collecting cases).

Even absent a due-process interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation.  *See Sandin v. Connor*, 515 U.S. 472 (1995).  From the information contained in the complaint, it appears that Plaintiff lost privileges for thirty days.  The Sixth Circuit has found that loss of privileges does not present an "atypical and significant" hardship implicating a protected liberty interest.  *See Wolff*, 418 U.S. at 571 n.19 ("We do not suggest, however, that the procedures required by today's decision for the deprivation of good time would also be required

for the imposition of lesser penalties such as the loss of privileges.").  Plaintiff has not identified any significant and atypical deprivation arising from his misconduct conviction. Because Plaintiff's misconduct conviction did not result in either an extension of the duration of his sentence or some other atypical hardship, his due-process claim fails.  *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).

### D. Long-term segregation

Attachments to the complaint show that after his disciplinary segregation ended, for the safety of staff, inmates, and the secure operation of KSP, it was determined that Plaintiff would continue to be held in administrative segregation pending the results of an administration control hearing.  The reason for the administrative control hearing was Plaintiff's having had five major category disciplinary report convictions in the prior six months.  Plaintiff was not recommended to complete an administrative control cycle, but it was determined on February 15, 2023, that Plaintiff would remain in RHU because of an ongoing internal affairs investigation and because of Plaintiff's affiliation with a violent security threat group, multiple members of which could not be released at the same time in order to maintain the security and safety of inmates, staff, and the prison.

At the outset, the Court notes that a prisoner has no constitutional right to be held in a specific security classification.  *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)).

Plaintiff alleges that the removal of all of his clothes and bedding and having to wear paper underwear and a suicide smock while in segregation violated the Eighth Amendment.

To establish an Eighth Amendment violation premised on conditions of confinement, an inmate must show that 1) he suffered a "sufficiently serious" deprivation and 2) the prison

official responsible for it acted with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 832–34 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)).  But an inmate cannot bring an Eighth Amendment claim if he alleges that the deprivation he suffered only caused him emotional distress.  42 U.S.C. § 1997e(e).  "No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act[.]"  *Id*.; *accord Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145-46 (6th Cir. 2002) ("Merchant does not allege that he was subjected to any physical injury as a result of the actual conditions in the segregated housing unit, and 42 U.S.C. § 1997e(e) precludes any claim by a prisoner 'for mental or emotional injury suffered while in custody without a prior showing of physical injury.'").  The Sixth Circuit has "repeatedly applied § 1997e(e) to bar Eighth Amendment claims for mental or emotional harm in the absence of physical injury." *Bartelson v. Parker*, No. 19-6027, 2021 WL 9544912, at *2 (6th Cir. 2021) (citations omitted).

Plaintiff does not allege that he suffered a physical injury.  The Court will dismiss this claim for failure to state a claim upon which relief may be granted.

### E. Grievances

Prisoners do not possess a constitutional right to a prison-grievance procedure.  *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures.").  Consequently, "there is no inherent constitutional right to an effective prison grievance procedure."  To the extent that Plaintiff raises a claim regarding his grievances going unanswered, he fails to state a § 1983 claim. *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail

staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure").

### F. Requested relief

Plaintiff seeks release from prison either by way of an order of this court or by parole review. He is precluded from seeking such relief through this § 1983 civil-rights complaint under the Supreme Court's decision in *Preiser v. Rodriguez*, 411 U.S. 475 (1973). The Supreme Court held in *Preiser*: "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate or speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id*. at 500. A prisoner may not use a § 1983 civil-rights action as an alternative to a petition for a writ of habeas corpus to challenge the legality of his confinement. *Id*. at 489-490.

### G. Claims on behalf of others

According to the complaint, Plaintiff's request for "cease and desist strip out/suicide smock and long term segregation" is to protect prisoners from long-term segregation and "stripping out" inmates. However, Plaintiff, as a *pro se* litigant, may not bring claims on behalf of others. *See* 28 U.S.C. § 1654; *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) (holding that § 1654 "does not permit plaintiffs to appear pro se where interests other than their own are at stake"). This claim will be dismissed.

### H. Claims going forward

The Court will allow Plaintiff's excessive-force claims to continue against Defendants Alverio and Dillon in their individual capacities.

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's official-capacity claims, ADA claim, due-process claim, and claims related to long-term segregation, grievances, for immediate or speedier release, and on behalf of others are **DISMISSED** for failure to state a claim upon which relief may be granted and for seeking monetary relief from Defendants immune from such relief pursuant to 28 U.S.C. § 1915A(b)(1) and (2).

The Clerk of Court is **DIRECTED** to terminate Scott Jordan, Lauren Plappert, and Charles Roberts as parties to this action.

The Court will enter a separate Service and Scheduling Order to govern the development of the continuing claims.  In allowing those claims to go forward, the Court expresses no opinion on their ultimate merit.

Date:   September 20, 2023

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:   Plaintiff, *pro se*
      Defendants Alverio and Dillon
      General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel, as directed above
4414.009