UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**DOMENICO VILARDO**                                                                                          **PLAINTIFF**

**v.**                                                                            **CIVIL ACTION NO. 5:23-CV-P49-JHM**

**CALEB ALVERIO et al.**                                                                                    **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion for summary judgment filed by Defendants Caleb Alverio and Joshua Dillon (DN 43). Plaintiff Domenico Vilardo filed a response to the motion (DN 48). The matter being ripe, the motion for summary judgment will be granted for the following reasons.

### I. STATEMENT OF THE CASE

Plaintiff, an inmate at the Kentucky State Penitentiary (KSP), sued several KSP employees. After initial review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff's Eighth Amendment excessive-force claims against Defendants Alverio and Dillon, corrections officers at KSP, in their individual capacities remained.

According to the verified complaint, Plaintiff is hearing impaired and a sign in front of his cell identifies him as such. Plaintiff states that on December 12, 2022, Defendant Alverio and another officer came to his cell door and told him to "turn around and be placed in restraints." DN 1, PageID #: 6. When Plaintiff asked why, Defendant Alverio "pulled out his pepper spray and threatened to spray him." *Id*. (cleaned up). Plaintiff states that he then put his back to the door and placed his hands in the slot to be cuffed, at which point Defendant Alverio said something that he could not hear. *Id*. When he turned around to look at Defendant Alverio's mouth, Defendant Alverio discharged his Oleoresin Capiscum (O.C.) pepper spray and proceeded to pull out his

taser. *Id*. Defendant Dillon then cuffed Plaintiff's left hand "then grabs my fingers and begins to twist them in an attempt to cause me harm and break my fingers. I turned around to ask him what he was doing and that's when Officer Alverio tased me unnecessarily." *Id*. (cleaned up). Plaintiff states that he then complied and was placed in restraints. *Id*. at PageID #: 7.

Plaintiff attached to the complaint a KSP document indicating that he is "Hearing Impaired/Deaf" and had been issued a "pocket talker" and "Earbuds" and a "Vibrating Watch." DN 1-1, PageID #: 13. He also attached a Detention Order dated December 12, 2022, at 2:31 p.m. relocating Plaintiff to the Cell 3 Restricted Housing Unit (RHU) "for disobeying a direct order and threatening staff." *Id*. at PageID #: 15.

Also attached was the Disciplinary Report of the incident forming the basis of the complaint on December 12, 2022, at 12:38 p.m. *Id*. at PageID #: 16. According to the report, Defendant Alverio stated that he arrived at Plaintiff's cell door to move him to Cell 3 RHU and ordered him to back up to the cell door to be restrained, but Plaintiff refused. *Id*. Defendant Alverio again issued the order and drew his can of O.C. spray as a show of force; when Plaintiff refused, he deployed a short burst of O.C. spray. *Id*. He further stated that when Plaintiff continued to refuse the order, he drew his taser and issued another order. *Id*. At this point, Plaintiff complied and backed up to the cell door. After Defendant Dillon placed Plaintiff's left hand in restraints, Plaintiff "spun around in an aggressive manner. To prevent [Plaintiff] from assaulting staff [Defendant Alverio] activated the Taser 7 ARC switch and made contact with [Plaintiff's] left elbow." *Id*. Plaintiff then allowed Defendant Dillon to place his right hand in restraints, and he was taken out of the cell. *Id*.

According to the Disciplinary Report, the investigator viewed the camera footage of the incident, describing it as follows:

>Staff arrive at the cell. Cuffs are in staff hand to be placed on the inmate then after a couple seconds OC is deployed into the cell. Staff stand there appearing to be waiting for the inmate to comply. Staff go to place the wrist restraints on the inmate, the taser 7 is drew and turned on. It appears the inmate may have pulled away from being placed fully in restraint. The taser 7 appears to of been utilized on the inmate. The wrist restraints are placed on the inmate by the Officer. Inmate Vilardo exits the cell and is escorted off the walk . . . .

*Id*.

Also attached to the complaint is "Part I – Write-Up and Investigation" of the incident. *Id*. at PageID #: 17. It contains the following narrative from Defendant Alverio:

>On December 12th 2022 at approximately 12:36 p.m. I, Officer Caleb Alverio, was called to assist in relocating inmate Domenico Vilardo DOC# 179298 to three cell house restrictive housing unit. Upon arriving to 6 cell house D-walk cell 6 I gave inmate Vilardo a direct order to turn around and comply with being placed in mechanical wrist restraints. Inmate Vilardo stated "For what?" I informed inmate Vilardo that he was being relocated to three cell house. Inmate Vilardo initially complied and backed up but once he got to the door he turned around in an aggressive manor and I deployed a short tactical burst of Oleoresin Capsicum spray from my issued can, striking inmate Vilardo in the neck and face area, to prevent any attempt of inmate Vilardo assaulting staff. Inmate Vilardo immediately turned around and allowed Officer Joshua Dillon to begin placing mechanical wrist restraints on inmate Vilardo. Officer Dillon placed the left mechanical restraint on inmate. Vilardo [] pulled his right wrist away from the tray slot and I deployed one cycle of the drive stun to inmate Vilardo's left elbow. Inmate Vilardo then complied and was placed in mechanical restraints. I then escorted inmate Vilardo to 3 cellhouse. Inmate Vilardo was very agitated and continued to scream and yell about being sprayed.

*Id*.

The Part II – Hearing/Appeal Report attached to the complaint records Plaintiff's statement at his disciplinary hearing:

>The aggressive manner is because I talk loud due to me being hearing impaired. I turned around and back up to the door. He never cuffed me and I turned around and ask him why. Then he drew his taser and I turned around and he tased. Dillon put cuffs on backwards and I asked him what he was doing and he tased me. I never attempted to assault anyone I did nothing wrong. If you can locate the picture he tased my right arm. I don't know what your doing he was twisting my wrist. like I said, as the OJT[1] states I complied. I was not aggressive I just didn't know what I was going to the hole for. It can't be a violent demonstration while I'm in cell. I

---

[1] It is not clear what "OJT" refers to.

3

> complied. They have conflicted statements. If you review the camera footage you can see him come back. He left I never cussed this man. Its not part of policy to take my property without court call. I complied. We have conflicted statement.

*Id*. at PageID #: 19 (cleaned up).

The Hearing/Appeal Report also contains Defendant Dillon's statement of what precipitated the order to move Plaintiff to RHU and the incident which occurred when Defendants attempted to move him.

> Officer Dillon statement: When I was walking by we talked about your music being [loud] you turned it down. When I come back the second time. Then you got mouth how I'm not gonna take your property mother f\*\*ker. If that's the way is gonna be after that is when I talked to the captain they sent Alverio to lock you up. Alverio came over asked you to cuff up that's when he pulled the taser and spray. You chose to be argumentative as I went to cuff you up you bucked and pull away when I had one cuff on you that's when he tased. I think he might of got you on the left shoulder. Yes, you did after he done tased you. You finally cuffed up.

*Id*. (cleaned up).

Plaintiff was found guilty of "[v]iolent demonstration." *Id*. at PageID #: 20.

## II. SUMMARY-JUDGMENT STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary-judgment motion. *Id*. at 252.

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

### III. ARGUMENTS

Defendants argue that no evidence supports either the objective or subjective component of an Eighth Amendment excessive-force claim.[2] They assert that no injury is alleged and, to the extent that some undescribed injury could be inferred, it would not support an Eighth Amendment excessive-force claim. DN 43-1, PageID #: 205. They assert that exhibits attached to their motion demonstrate that Plaintiff failed to comply "with repeated orders, turned toward Defendants aggressively once leading to a burst of OC spray to regain compliance, and that he again aggressively turned towards Defendants a second time to resist being placed in restraints which lead to one taser drive stun before restraints could be secured." *Id*. at PageID #: 204. They contend that the allegation that Defendant Dillon "excessively or painfully squeezed his hand and fingers

---

[2] Defendants also argue that they are entitled to summary judgment on qualified immunity grounds. Because the Court decides this matter on Eighth Amendment grounds, it will not review Defendants' qualified-immunity argument.

while attempting to secure the restraints . . . is not corroborated by any evidence." *Id*. They assert that the brevity of the incident and "all evidence show[] that Defendants' 'temper[ed] the severity' of the force despite active resistance." *Id*. (footnote omitted) (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Defendants further assert that it is indisputable that Plaintiff "did not initially comply with orders and the fact that Defendants' stated and uncontroverted intent was at least partially to restore discipline, he cannot prove that Defendants deployed any 'malicious use of force for the exclusive purpose to inflict pain' as is required." *Id*. at PageID #: 205 (citing *Johnson v. Sootsman*, 79 F.4th 608, 617 (6th Cir. 2023)).

In support, they attach the surveillance video of the incident (DN 43-2) and an Information Report, dated December 12, 2022. DN 43-3, PageID #: 214. That report summarizes the incident in almost all particulars verbatim to that in the incident report which Plaintiff attached to the complaint. *Id*.

Also attached is an Information Report about the incident a few minutes before which precipitated the order for Plaintiff to be moved to the RHU. In that report, Defendant Dillon explained that at approximately at 12:20 p.m. on December 12, 2022, he "was on a round and heard loud music . . . as I walked past cell # D6 [Plaintiff's] cell he had loud music playing from his keyboard. I told him to turn it down and put on headphones. After walking a couple cells down, the music was still loud." *Id*. at PageID #: 215 (cleaned up). He continued, "I then returned to his cell and told him I will remove the keyboard from him, and he said try it you're not taking anything from me. I walked away and he continued to be disrespectful." *Id*.

In response, Plaintiff argues that many claims in Defendants' memorandum in support of their summary-judgment motion "are inconsistent with the reports that were presented" as exhibits to his complaint. DN 48, PageID #: 229-30. Plaintiff states that Defendants have presented new

6

evidence that was not included in their discovery. *Id*. at PageID #: 230. He relies on exhibits attached to his complaint which, he asserts, state that he had "attempted to comply with commands." *Id*. at PageID #: 231. He argues that the "entire incident is documented as being less than two minutes. With the fact that the Plaintiff was in his cell and has a documented disability of hearing impairment, the response time shows Defendants' malicious intent." *Id*. at PageID #: 233-34 (cleaned up). He also asserts that Defendant Dillon now denies being the one who placed the restraints on him. *Id*. at PageID #: 235. Plaintiff argues that he never exhibited combative or assaultive behavior, yet Defendants applied unnecessary force with O.C. spray, by tasing him, causing "burns" to his skin, and by attempting to break his fingers. *Id*. at PageID #: 238.

## A. Undisputed Facts

The Court's careful review of the record reveals that the following material facts put forth by Plaintiff are not disputed by Defendants.

An order was issued for Plaintiff to be moved to Cell 3 RHU "for disobeying a direct order and threating staff." DN 1-1, PageID #: 15. A few minutes later, Defendant Alverio arrived at Plaintiff's cell to move him to the RHU. DN 1-1, PageID #: 17, 19. Defendant Alverio told Plaintiff to back up to the door to be cuffed. DN 1, PageID #: 6. Plaintiff did not immediately back up, and Defendant Alverio showed him the O.C. spray. DN 1, PageID #: 6 ("When I asked what for Officer Alverio immediately pulled out his pepper spray and threatened to spray me."); DN 43-3, PageID #: 214. When Plaintiff continued to be noncompliant, Defendant Alverio sprayed him with O.C. spray. DN 1, PageID #: 6; DN 43-3, PageID #: 214. Defendant Alverio then showed Plaintiff the taser. DN 1, PageID #: 6, DN 43-3; PageID #: 214. Plaintiff turned back around, and Defendant Dillon placed a restraint on his left wrist. DN 1, PageID #: 6; DN 43-3, PageID #: 214. Plaintiff then turned around again, and Defendant Alverio tased him. DN 1,

7

PageID #: 6; DN 43-3, PageID #: 214.  Plaintiff was then fully cuffed.  DN 1, PageID #: 7; DN 43-3, PageID #: 214.

### B. The Record

Plaintiff makes several claims in his response related to the evidence in the record.  He asserts that, though he requested all video and audio footage during discovery, only one camera angle was produced by Defendants and not until they attached it to the summary-judgment motion.  DN 48, PageID #: 239.  Defendants, however, indicated in their motion to seal the video filed contemporaneously with their summary-judgment motion that the video "has previously been made available for Plaintiff's review in the institution's legal library and it has been maintained for further review as necessary and appropriate for his potential response to Defendants' Motion for Summary Judgment."  DN 44, PageID #: 218.  Because Plaintiff does not contend that he did not have a chance to review the video, the Court finds no prejudice to Plaintiff because Defendants did not physically produce the video until they submitted it in support of the summary-judgment motion.

Plaintiff further asserts that Defendant Dillon denies being the one to place the restraints on him, which, according to Plaintiff "is evidence of the inconsistencies" in Defendants' statements.  DN 48, PageID #: 235.  Plaintiff is mistaken.  Defendants' memorandum in support of its motion and the exhibits attached thereto all state that Defendant Dillon cuffed Plaintiff.

Plaintiff also makes several requests for new discovery.  Rule 56(d) establishes the proper procedure when a party asserts that additional discovery is necessary to respond to a motion for summary judgment:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;

8

>   (2) allow time to obtain affidavits or declarations or to take discovery; or
>
>   (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Plaintiff has not provided an affidavit or declaration as required by Rule 56(d). *See Elite Contractors, Inc. v. CitiMortgage*, No. 12-cv-10284, 2012 WL 12884454, at *3 (E.D. Mich. May 7, 2012) ("A party that wishes to engage in fact discovery may defeat summary judgment if the party shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.") (internal quotations omitted). "However, a formal affidavit may not be required 'when a party has clearly explained its need for more discovery on a particular topic to the district court prior to or contemporaneously with the motion for summary judgment.'" *Unan v. Lyon*, 853 F.3d 279, 293 (6th Cir. 2017) (quoting *United States v. Rohner*, 634 F. App'x 495, 504 (6th Cir. 2015)).

Plaintiff filed a motion requesting depositions and subpoenas (DN 49) after Defendants filed their summary-judgment motion. The Court's Order (DN 49) denying Plaintiff's motion for depositions and subpoenas detailed the length of time this case has been pending and the multiple extensions of the discovery period, finding that Plaintiff's requests for depositions and subpoenas filed after Defendants filed their summary-judgment motion to be untimely.[3] Further if Plaintiff was unsatisfied with Defendants' responses to his discovery requests, he should have, but did not, file a motion to compel with the Court after conferring with defense counsel.

Plaintiff also complains that during discovery he requested the prison policies and procedures for hearing-impaired inmates, but, citing institutional security, Defendants did not produce them. He also contends that the requested policy information would have shown that

---

[3] It also took note of Plaintiff's failure to address the cost of the requested depositions. DN 49, PageID #: 249.

Defendant Alverio was not equipped to do a cell extraction with a combative inmate. DN 48, PageID #: 232-33, 236. He cites to his separately filed motion (DN 47) for depositions and subpoenas and asks the Court to subpoena video footage. *Id*. at PageID #: 243-44.

As far as Plaintiff's assertion that Defendants' failure to provide the policies and procedures for hearing-impaired inmates prevented him from providing proof of Defendants' failure to abide by those policies, proof of failure to follow prison procedures does not state a constitutional clam. *See, e.g.*, *McVeigh v. Bartlett*, 52 F.3d 325 (6th Cir. 1995) (holding that "defendant's alleged failure to comply with a prison policy directive during his attempt to remove plaintiff's arm from the food slot does not rise to the level of a constitutional violation"). "A district court does not abuse its discretion in denying discovery when the discovery requested would be irrelevant to the underlying issue to be decided." *Doe v. City of Memphis*, 928 F.3d 481, 490 (6th Cir. 2019) (quoting *In re Bayer Healthcare & Merial Ltd. Flea Control Prod. Mktg. & Sales Pracs. Litig.*, 752 F.3d 1065, 1074 (6th Cir. 2014)).

Furthermore, the Court notes that Plaintiff's allegation in his complaint that he turned around to face Defendant Alverio because he could not hear him and needed to see his lips is not supported by the record, *including the exhibits Plaintiff attached to his complaint*. None of Plaintiff's exhibits record that Plaintiff contended that he could not hear the orders or that he turned around because he could not hear Defendant Alverio. *Compare* Plaintiff's complaint DN 1, PageID #: 6 (alleging that Defendant Alverio said something he could not hear and when he turned around to look at his mouth, he was tazed); *with* Plaintiff's narrative at the hearing, DN 1-1, PageID #: 17 ("I turned around and back up to the door. he never cuffed me and I turned around and ask him why.").

10

In his response, Plaintiff also states that at the adjustment hearing he "requested photos of ta[s]er burns to left arm and this should have also been included in Defendants' discovery," DN 48, PageID #: 237, and asks the Court to subpoena "photos used at the adjustment hearing of ta[s]er burns to [his] arm." *Id*. at PageID #: 244. However, the adjustment hearing document attached to the complaint states, "The Adjustment Hearing Officer Captain Roberts **reviewed the photos on the yard supervisor's phone** during deliberation." DN 1-1, PageID #: 19 (cleaned up) (emphasis added). Thus, it appears that there were no printed photos in the record to produce. Regardless, "burn" marks as a result of tasing do not alone satisfy the objective prong of an Eighth Amendment claim. *See, e.g.*, *Buckley v. Haddock*, 292 F. App'x 791, 795 (11th Cir. 2008) (describing use of taser as not severe where only injuries were sixteen small burns and scarring with no broken bones or other physical injuries).

"The party opposing a motion for summary judgment . . . possesses no absolute right to additional time for discovery under Rule 56," *Doe v. City of Memphis*, 928 F.3d at 490 (citation omitted), and "bears the burden of showing that discovery is necessary," *White v. Jindal*, No. 13-15073, 2015 WL 870230, at *6 (E.D. Mich. Feb. 7, 2015) (citing *CGH Transport, Inc. v. Quebecor World, Inc.*, 261 F. App'x 817, 821 (6th Cir. 2008)). As such, the Court is satisfied that Plaintiff has not shown that additional discovery is necessary and that no record dispute exists which impedes a full and fair consideration of Plaintiff's arguments.

## IV. ANALYSIS

The Eighth Amendment's ban on cruel and unusual punishments prohibits the "'unnecessary and wanton infliction of pain'" on prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley*, 475 U.S. at 319). The Sixth Circuit recently set forth the Eighth Amendment excessive-force standard as follows:

11

> What qualifies as the "unnecessary and wanton infliction of pain"? This requirement has objective and subjective components, both of which follow from the Eighth Amendment's text. *See Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Objectively, harm to a prisoner must rise to a sufficiently serious level because the Eighth Amendment prohibits only "cruel and unusual" deprivations, not just uncomfortable or "even harsh" ones. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see Phillips*, 14 F.4th at 534. Subjectively, harm to a prisoner must result from a prison official's sufficiently volitional actions because the Eighth Amendment bars only willful conduct that "inflict[s]" "punishment," not accidental conduct that causes injury. *See Phillips*, 14 F.4th at 535 (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)).

*Sootsman*, 79 F.4th at 615.

### A. Objective component

The objective component of establishing an excessive-force claim requires the prisoner to prove that "sufficiently serious" pain was inflicted. *Williams v. Curtin*, 631 F.3d at 383. "Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Williams v. Cline*, No. 1:22-CV-1129, 2025 WL 1943004, at *2 (W.D. Mich. June 9, 2025) (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam)), *report and recommendation adopted*, 2025 WL 1940398 (W.D. Mich. July 15, 2025)). The objective component requires that the use of force be more than *de minimis*, *see Hudson*, 503 U.S. at 9-10, but the Supreme Court has cautioned that a "significant injury" is not a threshold requirement for sustaining an excessive-force claim. *See Wilkins*, 559 U.S. at 37; *Sootsman*, 79 F.4th at 616.

Here, Plaintiff has not satisfied the objective component. Plaintiff never alleged, and does not now provide evidence of, any lingering issues or pain from the use of the O.C. spray or taser. Defendants have provided evidence that he refused medical care. *See* DN 43-3, PageID #: 213 ("Licensed Practical Nurse Cassidy Eubanks conducted a visual check of Inmate Vilardo. Inmate Vilardo refused decontamination. Inmate Vilardo refused all medical offered."); PageID #: 216

12

([Plaintiff] was asked if he wanted to be decontaminated to which he refused. [Plaintiff] was asked if he wanted his vitals assessed for intake, patient refused any further medical assessment at this time.").

Furthermore, Plaintiff's allegations do not indicate that the force used by Defendant Alverio in deploying O.C. spray and his taser was more than *de minimis*. *See Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (upholding dismissal of Eighth Amendment claim of prisoner sprayed with pepper spray after disobeying repeated direct orders resulting only in discomfort "in the ordinary fashion of persons exposed to pepper spray"); *Alexander v. Ojala*, No. 17-2357, 2018 WL 5905588, at *3 (6th Cir. May 29, 2018) (finding that the use of a taser to stop an altercation between prisoners, which resulted in pain, muscle cramps, and difficulty sleeping, was *de minimis* despite plaintiff's assertion that he had stopped actively fighting when he was tased); *Guile v. Spence*, No. 2:19-CV-138, 2022 WL 658711, at *4 (W.D. Mich. Feb. 4, 2022) (finding that where inmate suffered "a hole in his back and a bit of soreness over the next few days" from being tased during a fight initiated by another inmate, more than a *de minimis* use of force was not present), *report and recommendation approved*, 2022 WL 656653 (W.D. Mich. Mar. 4, 2022).

Plaintiff alleges in his verified complaint that Defendant Dillon cuffed his left hand "then grab[bed] my fingers and beg[a]n to twist them in an attempt to cause me harm and break my fingers." DN 1, PageID #: 6 (cleaned up). Statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000). Here, the only portion of Plaintiff's statement that equates to an affidavit is that Defendant Dillon "grab[bed]" and "twist[ed]" his fingers. His conclusion that Defendant Dillon did so in an attempt to "cause [him] harm and break [his] fingers" is not based on personal knowledge, as Plaintiff gives no

13

reason to indicate why he would have knowledge of Defendant Dillon's motivations. *See, e.g.*, *Gatlin v. Hodges*, No. 2:17-CV-237-CHS, 2019 WL 5685370, at *3 (E.D. Tenn. Nov. 1, 2019) ("As nothing in the record suggests that Plaintiff had any personal knowledge that Defendant Hodges threw the water bottle at him maliciously and sadistically for the very purpose of causing harm, his conclusory statement to this effect . . . is insufficient to oppose [] the motion for summary judgment[.]").

Moreover, Plaintiff does not allege any harm stemming from Defendant Dillon's actions, and the Sixth Circuit has held that causing discomfort while being handcuffed is *de minimis* force. *Sootsman*, 79 F.4th at 617 (noting that the Sixth Circuit has previously found an officer's application of handcuffs that were too tight involved the use of *de minimis* force) (citing *Jones v. Johnson*, No. 20-1331, 2021 WL 1578185, at *2 (6th Cir. Apr. 21, 2021)).

The Court concludes that Plaintiff has failed to satisfy the objective component of his Eighth Amendment excessive-force claims.

### B. Subjective component

Even if Plaintiff had satisfied the objective component, he fails to satisfy the subjective one.

> As a subjective matter, the Court has held that prisoners who challenge a correctional officer's use of force must prove more than that the officer acted with 'deliberate indifference' to whether the force was necessary (the type of intent that prisoners must prove to challenge their conditions of confinement or medical care). *See* [*Hudson*, 503 U.S.] at 5-6; *cf. Wilson*, 501 U.S. at 302-03. The Court has instead described the "core judicial inquiry" in the use-of-force context as distinguishing between force used in a "good-faith effort to maintain or restore discipline" and force used "maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. [at] 37 . . . (quoting *Hudson*, 503 U.S. at 7). **Only the latter kind of force—force exerted maliciously and sadistically to inflict pain—violates the Eighth Amendment**. *See Hudson*, 503 U.S. at 5-7. So even if an officer uses force because of an "unreasonable" belief that it is necessary to restrain a prisoner, the officer does not violate the Eighth Amendment. *Whitley*, 475 U.S. at 324.

14

*Sootsman*, 79 F.4th at 615-16 (emphasis added). The *Sootsman* Court explained further:

> To decide whether a jury could find that an officer acted with this malicious intent, the Supreme Court has identified several factors to consider: What was the extent of the prisoner's injury? What was the nature of the threat that justified the use of force? Was the amount of force proportional to the threat? And did the officer take any actions designed to reduce the required amount of force? *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321. More generally, we have added that, while judges may review an encounter by slowing down, pausing, and replaying a video, officers have no such luxury. They must make quick decisions in the heat of the moment. So we defer to their decisions and avoid "unreasonable post hoc judicial second-guessing" of their conduct. *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008) (citation omitted); *see also Griffin [v. Haddrick*, 604 F.3d [949,] 954 [6th Cir. 2010].

*Id.* at 618. The Court will examine each factor below.

### 1. Extent of injury

According to the record, Plaintiff was sprayed once with O.C. spray and received one taser discharge and, during the application of hand restraints, his fingers were "grab[bed]" and "twist[ed]." Plaintiff did not allege that he suffered any pain or injury from these events, and the record is clear that Plaintiff was offered but refused any medical treatment, not even decontamination. And, although photos were viewed at the hearing, DN 1-1, PageID #: 19, presumably of Plaintiff's arm allegedly showing what he terms "burn" marks, Plaintiff reported no pain or other injury from the tasing. Further, he offers no reason that the marks were not merely consistent with the use of a taser. *Cf. Green v. Garris*, No. 807-CV-969-T-17, 2008 WL 2222321, at *9 (M.D. Fla. May 28, 2008) ("The contact marks (these are not true 'burns') shown in the photographs attached to Green's complaint are consistently normal with the use of a taser in the drive stun mode.").

### 2. Nature of threat

Contrary to Plaintiff's assertion, simply because he was in his cell with the door closed does not prove that he was not a threat or that guards categorically could not constitutionally grab

15

and twist his fingers or deploy O.C. spray or tasers into the cell. Here, he admits that he turned around twice rather than remaining still with his hands presented to be cuffed, and both Defendants reported contemporaneously that Plaintiff did so in an aggressive manner. DN 1-1, PageID #: 17 ("[H]e turned around in an aggressive manor and I deployed a short tactical burst of Oleoresin Capsicum spray from my issued can, striking inmate Vilardo in the neck and face area, to prevent any attempt of inmate Vilardo assaulting staff." *Id.* at PageID #: 19 (Defendant Dillon's statement that "[y]ou chose to be argumentative as I went to cuff you up you bucked and pull away when I had one cuff on you"). And, Plaintiff has not produced facts to show that, in the heat of the moment, Defendants' use of force was unconstitutional. *See Sootsman*, 79 F.4th at 618 (opining that because officers "must make quick decisions in the heat of the moment . . . we defer to their decisions").

Moreover, guards may use O.C. spray or tasers when a prisoner disobeys orders, not only when a prisoner is a threat. Corrections officers do not violate a prisoner's Eighth Amendment rights when they apply force "in a good-faith effort to maintain or restore discipline." *Jennings*, 93 F. App'x at 725. "'Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control.'" *Caldwell v. Moore*, 968 F.2d 595, 601 (6th Cir. 1992) (quoting *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)). Thus, for example, the Sixth Circuit has "found no Eighth Amendment violation where a prisoner was sprayed with pepper spray after repeatedly disobeying orders to exit the shower," *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014), and has rejected an Eighth Amendment claim where a prison officer's use of a stun gun was necessary to enforce his orders on a recalcitrant inmate. *Caldwell*, 968 F.2d at 601.

*3. Proportionality of force*

The undisputed facts show that force was used only after Plaintiff did not comply and only after he was first shown the O.C. spray and, then, the taser. Further, no force was applied after Plaintiff was cuffed. The Sixth Circuit has repeatedly described the use of a taser or pepper spray as a proportional level of force in response to a prisoner's refusal to follow orders, including, for example, an order to accompany an officer, *Sams v. Quinn*, No. 17–1419, 2017 WL 4574497, at *2 (6th Cir. Sept. 7, 2017), and an order to exit the shower. *Jennings*, 93 F. App'x at 725; s*ee also, e.g.*, *Alexander v. Ojala*, 2018 WL 5905588, at *3; *Caldwell*, 968 F.2d at 601–02.

Escalation of force occurred only after further non-compliance. Plaintiff's momentary compliance with the order to back up to the door does not automatically make any further use of force unreasonable under the Eighth Amendment when Plaintiff again turned around while Defendant Dillon was halfway through applying the hand restraints. *See Roark v. Robertson*, No. 5:10-CV-147, 2011 WL 3813104, at *5 (W.D. Ky. Aug. 26, 2011) (granting summary judgment to defendants where Plaintiff's only allegation of excessive force was that he was tased twice while wearing handcuffs where evidence showed that he continued to be verbally abusive and had an object in his hand).

*4. Defendants' actions to reduce force*

The Court has reviewed the video footage, which has no audio and does not show Plaintiff's cell, only the hallway in front of his door, and concurs with the investigator's description in the exhibits that Plaintiff attached to his complaint. DN 1-1, PageID #: 6. The video shows officers arriving at Plaintiff's cell at approximately 8 seconds into the video. The last time in the video that an officer is at the cell door is approximately 2:28. At approximately, 3:14 in the video

17

Plaintiff, handcuffed, comes out of the cell. Nothing in the video supports a conclusion that Defendants used malevolent force.

Plaintiff argues that the brevity of the incident demonstrates Defendants' malicious intent. The Court is not persuaded. Clearly, had Plaintiff immediately complied and allowed the restraints to be put on, the incident would have taken less time.

The Court is satisfied that no reasonable jury could find on the record evidence that Defendants acted maliciously. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

Defendants, having met their summary-judgment burden, and Plaintiff having failed to "show specific facts that reveal a genuine issue for trial," *Laster*, 746 F.3d at 726, Defendants are entitled to summary judgment.

## V. ORDER

For the reasons stated above,

**IT IS ORDERED** that Defendants' motion for summary judgment (DN 43) is **GRANTED**.

The Court will enter a separate Judgment dismissing this case.

Date: August 6, 2025

*[signature]*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
    Counsel of record
4414.009